IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTHONY TOWNSEND,<br><br>*Plaintiff,*<br><br>v.<br><br>STEPHEN BEERS, *et al,*<br><br>*Defendants.* | Civil Action No. 2:24-cv-1107<br><br>Hon. William S. Stickman IV |

## MEMORANDUM OPINION

WILLIAM S. STICKMAN IV, United States District Judge

Plaintiff Anthony Townsend ("Plaintiff"), proceeding *pro se*, filed a complaint pursuant to 42 U.S.C. § 1983 alleging his rights were violated on July 27, 2024, during a traffic stop of the vehicle he was driving. (ECF No. 4). Defendant City of Pittsburgh ("City") filed a motion to dismiss on October 31, 2024 (ECF No. 13), and the Court ordered Plaintiff to respond by November 26, 2024. (ECF No. 16). Plaintiff failed to respond. On December 3, 2024, the Court ordered Plaintiff to show cause by January 5, 2025. (ECF No. 22). He failed to do so. Meanwhile, Defendants Stephen Beers, Andrew Nagy, and Aaron Gray (collectively, "Defendant Officers") filed a motion to dismiss on December 17, 2024. (ECF No. 23). The Court ordered Plaintiff to file his response by February 7, 2025. (ECF No. 25). Plaintiff once again failed to respond. On February 26, 2025, the Court ordered Plaintiff to show cause by March 24, 2025. (ECF No. 26). He failed to do so. Consequently, this case will be dismissed with prejudice due to Plaintiff's failure to prosecute, and the pending motions will be terminated as moot.

I. STANDARD OF REVIEW

A federal court has the discretion to dismiss a proceeding *sua sponte* based on a party's failure to prosecute the action. *Link v. Wabash R.R. Co.*, 370 U.S. 626, 629-30 (1962); *Qadr v. Overmyer*, 642 F. App'x 100, 102 (3d Cir. 2016) (citing Fed. R. Civ. P. 41(b)). Federal Rule of Civil Procedure 41(b) states in pertinent part:

> If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule—except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19—operates as an adjudication on the merits.

Fed. R. Civ. P. 41(b). The United States Court of Appeals for the Third Circuit has stated that "a district court dismissing a case *sua sponte* 'should use caution in doing so because it may not have acquired knowledge of the facts it needs to make an informed decision.'" *Qadr*, 641 F. App'x at 103 (quoting *Briscoe v. Klaus*, 538 F.3d 252, 258 (3d Cir. 2008)). Before engaging in a *sua sponte* dismissal, "the court 'should provide the plaintiff with an opportunity to explain his reasons for failing to prosecute the case or comply with its orders.'" *Id.* (quoting *Brisco*e, 538 F.3d at 258). Additionally, the Third Circuit has established a six-factor balancing test to guide a court's analysis as to whether to dismiss a claim as a sanction:

> (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.

*Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 868 (3d Cir. 1984) (emphases omitted). In weighing the *Poulis* factors, the court must analyze the factors in light of the "strong policy favoring decisions on the merits." *Hildebrand v. Allegheny County*, 923 F.3d 128, 132 (3d Cir. 2019). Although a court must balance the six factors, it need not find that all factors are met

before dismissing an action with prejudice. *See Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 919 (3d Cir. 1992) (concluding that "it is not necessary that all of the factors point toward a default before that sanction will be upheld"); *see also Mindek v. Rigatti*, 964 F.2d 1369, 1373 (3d Cir. 1992) ("[N]ot all of the *Poulis* factors need to be satisfied in order to dismiss a complaint").

## II.    ANALYSIS

As to the first *Poulis* factor, the court must consider the extent to which the dilatory party is personally responsible for the sanctionable conduct. *See Adams v. Trs. of N.J. Brewery Emps.' Pension Tr. Fund*, 29 F.3d 863, 873 (3d Cir. 1994) ("[I]n determining whether dismissal is appropriate, we look to whether the party bears personal responsibility for the action or inaction which led to the dismissal."). Since the filing of this matter, Plaintiff has ignored multiple orders of court, and continues to ignore orders to respond to the pending motions to dismiss. Because Plaintiff is proceeding *pro se*, he is solely responsible for his own conduct. *See, e.g., Colon v. Karnes*, 2012 WL 383666, at *3 (M.D. Pa. Feb. 6, 2012) ("Plaintiff is proceeding *pro se*, and thus is responsible for his own actions."). This factor weighs heavily in favor of dismissal.

The second *Poulis* factor assesses whether the adverse party has suffered prejudice because of the dilatory party's behavior. Relevant concerns include "the irretrievable loss of evidence, the inevitable dimming of witnesses' memories[,] the excessive and possibly irremediable burdens or costs imposed on the opposing party," *Adams*, 29 F.3d at 874, and "the burden imposed by impeding a party's ability to prepare effectively a full and complete trial strategy," *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 222 (3d Cir. 2003). Although this factor does not weigh heavily here, the Court notes that Plaintiff's continued inaction frustrates and delays resolution of this action by preventing a timely resolution of the pending motions to dismiss.

The third *Poulis* factor weighs strongly in favor of dismissal. Despite being warned that failure to comply with orders of court and respond to Defendants' motions may result in dismissal for failure to prosecute, Plaintiff has failed to do so. This conduct is sufficient to establish a history of dilatoriness. *See Mack v. United States*, 2019 WL 1302626, at *2 (M.D. Pa. Mar. 21, 2019) ("Mack has established a history of dilatoriness through his failure to notify the Court of his whereabouts and failure to comply with Court Orders and rules.").

With respect to the fourth *Poulis* factor, "[w]illfulness involves intentional or self-serving behavior." *Adams*, 29 F.3d at 874. While it is difficult to evaluate willfulness on the record available, there is nothing on the docket to suggest that Plaintiff is not receiving the Court's orders. Under such circumstances, the Court must conclude that Plaintiff's failure to respond to court orders regarding Defendants' pending motions is intentional, tilting this factor in favor of dismissal.

The fifth factor address the effectiveness of sanctions other than dismissal. *Poulis*, 747 F.2d at 869. It is well-established that alternative, monetary sanctions are ineffective when the Plaintiff is indigent. *See Emerson v. Thiel College*, 296 F.3d 184, 191 (3d Cir. 2002). Moreover, alternative sanctions are unlikely to be effective against Plaintiff, who refuses to adhere to court orders. *Mack*, 2019 WL 1302626, at *2 (noting that the Court was "incapable of imposing a lesser sanction" on a plaintiff who refused to participate in his own lawsuit). As such, this factor weighs heavily in favor of dismissal.

Finally, the Court must consider the potential merit of Plaintiff's claims. A claim will be deemed meritorious "when the allegations of the pleadings, if established at trial, would support recovery by plaintiff." *Poulis*, 747 F.2d at 869-70. The Court finds that Plaintiff's claims against Defendants are not meritorious.

As to Defendant Officers, Plaintiff has failed to state a cognizable claim under § 1983. To state a cognizable claim under § 1983, a plaintiff is required to adequately allege: (1) the plaintiff was deprived of a "right or privilege secured by the Constitution or the laws of the United States" and (2) the plaintiff was deprived of his rights by a person acting under the color of state law. *Williams v. Borough of W. Chester*, 891 F.2d 458, 464 (3d Cir. 1989). Plaintiff failed to plead facts demonstrating that any of the Defendant Officers lacked probable cause to arrest, detain, or criminally charge him and/or that any of the officers used excessive force. Notably, he has failed to set forth sufficient allegations as to the personal involvement of each officer.

To state a claim for false arrest under the Fourth Amendment, a plaintiff must allege facts establishing that he was arrested without probable cause. *See Orsatti v. N.J. State Police*, 71 F.3d 480, 482 (3d Cir. 1995). "[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Id.* at 483 (citation omitted). "False arrest and false imprisonment claims will 'necessarily fail if probable cause existed for any one of the crimes charged against the arrestee.'" *Harvard v. Cesnalis*, 973 F.3d 190, 199 (3d Cir. 2020) (quoting *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 477 (3d Cir. 2016)). Here, Plaintiff was observed committing a traffic violation, and he failed to bring his vehicle to a stop until he pulled into his own driveway. He then refused to provide identification and registration, and refused (and resisted) to get out of the vehicle. (ECF No. 4, p. 2). Under such circumstances, the officers had probable cause to arrest Plaintiff. Plaintiff admits that he violated two traffic laws – he failed to stop at a red light and he

refused to adhere to the police directive to stop his vehicle. (*Id.*). The existence of probable cause negates any claim for false arrest or false imprisonment against Defendant Officers.

Likewise, Plaintiff has failed to set forth a viable excessive force claim. "[C]laims that law enforcement officers have used excessive force ... in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard[.]" *Graham v. Connor*, 490 U.S. 386, 395 (1989); *see also Santini v. Fuentes*, 795 F.3d 410, 417 (3d Cir. 2015) ("In an excessive force case, we determine whether a constitutional violation has occurred using the Fourth Amendment's objective reasonableness test."). "Courts determine whether the force used is 'objectively reasonable' based on the totality of the circumstances, ... and certain factors, including: 'the facts and circumstances of each particular case, ... the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Klein v. Madison*, 374 F. Supp. 3d 389, 407 (E.D. Pa. 2019) (quoting *Graham*, 490 U.S. at 386). All that has been specifically alleged is that Defendant Beers grabbed Plaintiff's shirt when he attempted to remove the non-compliant Plaintiff from the vehicle. The officers never deployed a Taser to remove Plaintiff from the vehicle. Although Plaintiff claims that Beers and Gray both "assaulted" him when placing Plaintiff in the police vehicle, he has provided no specific factual allegations. The conclusory allegation of "assault" is insufficient to allege a plausible claim.[1] *Ashcroft v. Iqbal*, 556 U.S.

---

[1] Plaintiff also fails to set forth any factual allegations to support a claim of assault under Pennsylvania law. Furthermore, the tort of assault requires that the defendant act with the intent to place the plaintiff in apprehension of imminent harmful or offensive bodily contact and that the plaintiff actually experience such apprehension. *D'Errico v. DeFazio*, 763 A.2d 424, 431 n.2 (Pa. Super. 2000) (citation omitted). Police officers are privileged to commit these torts using a reasonable amount of force when effectuating an arrest. *See Groman v. Twp. of Manalapan*, 47 F.3d 628, 633–34 (3d Cir. 1995); RESTATEMENT (SECOND) OF TORTS § 118, 132 (1965). It is

662, 678 (2009). Thus, nothing in the facts pled show that Defendant Officers' alleged use of force was objectively unreasonable during the attempt to arrest Plaintiff.

Next, to the extent Plaintiff is attempting to pursue § 1983 relief under the Fifth Amendment, he has failed to state claim. Plaintiff cannot recover under the Fifth Amendment against municipal actors like Defendant Officers. *See Huffaker v. Bucks County District Attorney's Office*, 758 F. Supp. 287, 290 (E.D. Pa. 1991); *Nguyen v. U.S. Catholic Conference*, 719 F.2d 52, 54 (3d Cir. 1983).

As to the City, Plaintiff has failed to state a cognizable *Monell* claim against it under § 1983. Where there is no underlying constitutional violation, a *Monell* claim will not lie against a municipality.[2] *Bhatnagar v. Meyer*, No. 22-2848, 2023 WL 5378834, at *3 (3d Cir. Aug. 22, 2023) (affirming dismissal of a *Monell* claim after determining that the plaintiff "had no remaining cognizable constitutional claim"). Because, as set forth above, Plaintiff has failed to state a claim for a constitutional violation, any *Monell* claim against the City of Pittsburgh fails. It also fails because (1) there is no individual with final policymaking authority named in this

---

well-established that employees of the Commonwealth of Pennsylvania are entitled to sovereign immunity from common law tort claims so long as they are acting within the scope of their duties. *See* PA CONST. ART. 1, § 11; 1 Pa. C.S.A. § 2310.

[2] A municipality or other local government may be liable under § 1983 if it subjects a person to a deprivation of rights or causes a person to be subjected to such a deprivation. *See Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 692 (1978). Under § 1983, a local government is responsible only for "their own illegal acts." *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986) (citation omitted). Thus, a municipality may be held liable under § 1983 only when its policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury. *See Monell*, 436 U.S. at 694. Within this framework, the Third Circuit has clarified that there are three ways a municipality can be liable for the torts of its employees. *McGreevy v. Stroup*, 413 F.3d 359, 367 (3d Cir. 2005). "First, the municipality will be liable if its employee acted pursuant to a formal government policy or a standard operating procedure long accepted within the government entity; second, liability will attach when the individual has policy making authority rendering his or her behavior an act of official government policy; third, the municipality will be liable if an official with authority has ratified the unconstitutional actions of a subordinate, rendering such behavior official for liability purposes." *Id.* (internal citations omitted).

case who could be said to have acted on behalf of the City of Pittsburgh and (2) Plaintiff does not allege that a policy or custom of the City of Pittsburgh caused a violation of his constitutional rights. Thus, the claim against the City of Pittsburgh is subject to dismissal with prejudice as amendment would be futile.

On balance, the Court concludes that five of the six *Poulis* factors support dismissal.

### III.   CONCLUSION

While the Court is mindful of the Third Circuit's strong policy in favor of deciding cases on the merits, such a resolution is impossible when a Plaintiff declines to meaningfully participate in his own lawsuit. The Court concludes that the extreme sanction of dismissal is supported by the *Poulis* factors and the record. This case will be dismissed with prejudice due to Plaintiff's failure to prosecute, and the pending motions will be dismissed as moot. Orders of Court will follow.

BY THE COURT:

WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

Dated: 4/21/25